UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-00813-WYD

SHEILA A. HOPKINS,

      Plaintiff,

v.

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's applications for Disability Insurance Benefits and Supplemental

Security Income under the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383c.

Plaintiff's applications filed in January 2003 alleged that she became disabled on

August 31, 2001.  Transcript ["Tr."] at 69-73, 348-352.  Plaintiff asserted that she was

disabled due to hepatitis C, diabetes, lower back pain, and left knee pain.  *Id.* at 75.

Plaintiff's applications were denied initially.  *Id.* at 51-55, 354-58.

      Following a hearing on January 28, 2004 (Tr. at 359-407), Administrative Law

Judge ["ALJ"] Wayne N. Araki issued an unfavorable decision on March 13, 2004.  *Id.*

at 23-36.  He found that Plaintiff was not disabled at step five because she could be

expected to make a vocational adjustment to work that exists in significant numbers in

the national economy.  *Id.* at 35.  I conduct a more detailed review of this decision in Section II, *infra*.

Upon Plaintiff's request for review, the Appeals Council determined on March 4, 2005, that there was no basis to review the ALJ's decision.  Tr. at 6-8.  The ALJ's decision thus became final for purposes of judicial review.

II.    THE ALJ'S DECISION

The ALJ noted that Plaintiff was 48 years old with more than a high school education who alleged disability due to hepatitis C, diabetes, lower back and left knee pain, headaches, and depression.  *Id.* at 26-27.  She  was insured for disability benefits through the date of the decision.  *Id.* at 27.

The ALJ found at step one of the five-step sequential analysis required by law that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability.  Tr. at 27, 34.  At steps two and three, the ALJ found that Plaintiff had severe impairments of hepatitis C and an affective disorder, but that they did not meet or equal a Listing.  *Id.* at 28, 35.

The ALJ then examined the medical evidence and assessed Plaintiff's residual functional capacity ["RFC"].  Tr. at 28-33.  Plaintiff was found to have the RFC:

> to lift/carry 20 pounds occasionally and 10 pounds frequently; stand (static) for 15-30 minutes for 2 hours a day and stand/walk (nonstatic) for 30 minutes for 2-4 hours a day, i.e., remain on her feet for a total of 4 hours in an 8-hour workday; sit for 1-2 hours in 6-8 hours; and push/pull up to 20 pounds, stoop, kneel, and crouch occasionally.  She has no upper extremity restrictions, however she is precluded from using foot controls, climbing, balancing, and crawling.  Additionally, the claimant has no communication or visual restrictions, but is precluded from working around exposure to extreme cold, humidity, and vibration and must avoid

> proximity to moving mechanical parts, exposure to electrical shock,
> working in high exposed places, exposure to radiation, working with
> explosives, exposure to toxic or caustic chemicals, and other
> environmental conditions.  The claimant is precluded from working in food
> preparation, food contact, or food services, and can occasionally interact
> face to face with others.  Lastly, although her ability to concentrate and
> attend to tasks is reduced somewhat secondary to her depression, she is
> not precluded from performing unskilled work.

*Id*. at 33, 35.  The ALJ also found that Plaintiff had certain additional mental

impairments.  *Id.* at 33.

In making this assessment, the ALJ considered Plaintiff's subjective allegations

and credibility.  Tr. at 31-33.  The ALJ found that Plaintiff's "statements and testimony

are not generally credible in light of her life style, the degree of medical treatment

required, the reports of the treating and examining practitioners and the findings made

on examination."  *Id*. at 31.

Proceeding to step four, the ALJ analyzed Plaintiff's ability to perform her past

relevant work.  Tr. at 33.  The ALJ found, based on the testimony of a vocational

expert, that Plaintiff cannot perform her past relevant work as a dental assistant and a

companion.  *Id*. at 33, 35.

At step five, the ALJ found that Plaintiff was 45 years old on the alleged onset

date, constituting a younger individual.  Tr. at 34.  The vocational expert ["VE"] retained

by the ALJ testified that a hypothetical person with Plaintiff's RFC and vocational profile

was capable of making a vocational adjustment to other work.  *Id*.  Specifically, the VE

found that the following jobs could be performed:  assembly type jobs—an example of

which was fishing reel assembler (with 104,000 jobs in the national economy and 1,200

locally), and parimutuel ticket checker (with 86,000 jobs in the national economy and 1,500 locally). *Id.* The ALJ accepted the VE's testimony, found that those jobs are performed in today's market as described in the Dictionary of Occupational Titles ["DOT"], and found that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the economy. *Id.* Accordingly, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act. *Id.* at 34, 35.

III.   ANALYSIS

A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

-4-

Finally, I note that my review of the ALJ's decision in this case was hampered by the fact that Plaintiff did not give citations in the record for the majority of the evidence she was citing.  Counsel for Plaintiff is advised that this will not be tolerated in any future pleadings.  Nevertheless, I conducted my own review of the record and determine, for the reasons stated below, that reversal of the Commissioner's decision and a remand is appropriate.

      B.      Whether the ALJ's Decision is Supported by Substantial Evidence

             1.      Whether the ALJ Erred in the RFC Assessment and in Weighing the Physicians' Findings

I begin my analysis with Plaintiff's contention that the ALJ erred in connection with his assessment of her RFC.  More specifically, Plaintiff argues that while the ALJ summarized the medical evidence, the RFC assessment is conclusory and does not contain any reference to the supporting evidence as required by SSR 96-8p.  I agree and find that this case must be reversed and remanded for a proper analysis of Plaintiff's RFC.

"It is axiomatic that all of the ALJ's required findings [including the RFC] must be supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).  Social Security Ruling 96-8P, 1996 WL 374184, at *7 (1996) directs that the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . . The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record

were considered and resolved." Where the court cannot determine whether the ALJ's

RFC findings are supported by lack of substantial evidence due to lack of specificity as

to the evidence relied on, reversal and remand is appropriate. *See Moon v. Apfel*, No.

04-7130, 2005 WL 3446576, at *3 (10th Cir. 2005).

In this case, I find that the ALJ erred in not describing what his RFC assessment

was based on. The ALJ discussed findings from Dr. Neal, a treating physician, and

rejected them. Tr. at 31. He also discussed other medical evidence, including a

consultative examination by Dr. Burt. *Id.* at 28-30. However, the ALJ did not disclose

what evidence he relied on for the findings in the RFC and whether he accepted or did

not accept the findings of Dr. Burt and the other medical evidence noted in the opinion.

*Id.* at 33. The ALJ did state that the conclusion that Plaintiff was not disabled was

supported by the opinions of the stage agency consultants who found that Plaintiff

could perform light work. *Id.* (citing physical and mental assessments by Dr. Garnand

and another physician whose name I cannot decipher, tr. at 117-141). However, the

ALJ did not state whether the RFC assessment came in whole or in any part from these

consultations. From my own examination of these assessments, I am unable to

determine what evidence the RFC findings were based on. This requires that the case

be reversed and remanded for proper fact finding.

Plaintiff also argues that the ALJ erred in his decision to reject treating physician

Dr. Neal's assessment of her capacity. I agree, and find that the ALJ's decision to

reject Dr. Neal's opinion is not supported by substantial evidence for the reasons stated

below.

Dr. Neal opined in his Physical Residual Functional Capacity Questionnaire that Plaintiff's diagnosis included hepatitis C, lumbar disc bulges 3 levels, depression and other impairments.  Tr. at 343.  He found that Plaintiff's symptoms include chronic fatigue, right upper quadrant pain, enlarged liver, muscle and joint aches, abdominal pain, weakness, neuropathy possible, urinary frequency and incontinence, parasthesia in lower extremities, and chronic back pain.  *Id.*  He also identified clinical findings and objective signs for the symptoms, and noted that Plaintiff is intolerant to her medication and/or has side effects of fatigue and myalgia.  *Id.* at 343-44.  Dr. Neal imposed numerous work restrictions, and found that Plaintiff's experience of fatigue, pain or other symptoms were frequently severe enough to interfere with attention and concentration.  *Id.* at 344.  He also found that Plaintiff was unable to work, and that if she did work, it is likely she would miss more than four days of work a month.  *Id.* at 344-45.

The ALJ found that Dr. Neal's assessment was "without merit" in its entirety.  Tr. at 31.  The ALJ stated several reasons for deciding that this opinion was without merit. First, the ALJ found that the opinion was inconsistent with Dr. Neal's own findings, since Dr. Neal found Plaintiff had "no hematosplenomegaly" (which I interpret to mean no enlargement of the liver) in an office visit in November 2003 office.  *Id.*  It is true that Dr. Neal made that assessment in November 2003.  *Id.* at 328.  However, the ALJ ignored the fact that the very definition of hepatitis is an inflammation of the liver.  *See* Merriam-Webster Online Dictionary.  In other words, hepatitis is a disease that is characterized by such an inflammation.  *Id.*

Thus, in order to find that Dr. Neal's findings were erroneous the ALJ would have to disbelieve all the medical evidence in the record showing that Plaintiff has hepatitis C.  The ALJ obviously did not disbelieve this evidence since he adopted hepatitis C as a severe impairment, and this is substantiated by the record.  Further, there is medical evidence in the record from the specialists that treated the hepatitis C that support Dr. Neal's inflammation finding, which the ALJ ignored.  *See* Tr. at 215 (Hepatitis C. . . with Grade II inflammation"), 213.  Thus, I find it was error to reject Dr. Neal's findings on that basis.  At the very least, if the ALJ thought that this diagnosis was questionable given the November 2003 finding, he should have contacted Dr. Neal for clarification as to this issue.  See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1) (2001)).[1]

The ALJ also questions Dr. Neal's motives in issuing his findings.  This is pure speculation and does not provide a basis to reject the opinion.  The ALJ further contends that Dr. Neal's opinion rests, at least in part, on an assessment of an impairment (hepatitis C) outside of his area of expertise.  I find error with this statement.  Dr. Neal's assessment is based on a number of impairments of Plaintiff, only one of which is hepatitis C.  It is impossible to determine from the report to what extent the hepatitis impacted or did not impact the restrictions Dr. Neal imposed on Plaintiff.  Indeed, many of the restrictions appear to be more consistent with Plaintiff's lower back problems noted in the assessment.

---

[1]  I also find that it is improper to assume that because one visit revealed no inflammation of the liver, Dr. Neal's diagnoses and extensive findings as to Plaintiff's many impairments cannot be trusted. These findings were based on his overall treatment of Plaintiff, not just one visit.

Further, even if I assume that the findings are a result of Plaintiff's hepatitis C, it was improper to reject Dr. Neal's findings because he was not a specialist in this area. It appears from the record that Dr. Neal was Plaintiff's treating physician who treated her for a number of her impairments, including symptoms from hepatitis C.  It is speculation to assume that he was unable from this treatment to assess Plaintiff's functional capacity.  I also note that while Plaintiff did see specialists for this disorder, the ALJ has cited no evidence in the record from the specialists that is inconsistent with Dr. Neal's findings.  Indeed, while the ALJ stated that Dr. Neal's findings "contrast sharply with the other evidence of record", he failed to state what evidence he was relying on.  This also was error, particularly as it appears that many of Dr. Neal's findings were not inconsistent with the record and/or were substantiated in part by such consultative examiners as Dr. Burt.  Tr. at 229-31.  However, I leave this determination to the ALJ. to properly determine on remand.

As to Dr. Neal's opinion that Plaintiff is unable to work, the ALJ was not entitled to reject that opinion without adequate consideration.  "The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."  *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. 2002).

Finally as to Dr. Neal, when an ALJ decides that a treating physician's opinions are not dispositive and not entitled to controlling weight, that does not allow him to reject the opinions outright.  *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004).

Instead, the opinion are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'"  *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  The ALJ's opinion does not reflect that he gave Dr. Neal's opinion deference and weighed it, that he gave "any consideration of what lesser weight the opinion should be given", or that he discussed the relevant factors set out in 42 U.S.C. § 404.1527.  *Id.*

On remand, the ALJ is directed to give proper consideration to Dr. Neal's findings and assessment as a treating physician.  Specifically, the ALJ is directed to properly consider and weigh, among other things, (1) whether all of Plaintiff's impairments noted therein are severe, including Plaintiff's lower back problems, (2) whether and how all the symptoms and restrictions noted in the assessment impact Plaintiff's RFC, (3) the finding that Plaintiff's impairments would prevent her from working more than four days a month, (4) the finding that Plaintiff would not be able to work at all, and (5) the finding as to side effects and/or intolerance to medications.

I also find error with the ALJ's treatment of Plaintiff's mental impairments in the RFC and in the hypothetical questions given to the vocational expert.  The ALJ's RFC as to mental impairments appeared to heavily rely on the findings of state agency psychiatrist Dr. Garnand, who completed a Psychiatric Review Technique Form.  Tr. at 125-142.  Dr. Garnand found that due to a major depressive disorder and generalized anxiety disorder, Plaintiff had mild restrictions of activities of daily living and difficulties in maintaining social relations and moderate difficulties in maintaining concentration, persistence or pace.  *Id.* at 139.  He also found that Plaintiff was moderately limited in

the ability: (1) to carry out detailed instructions, (2) to maintain attention and concentration for extended periods of time, and (3) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 125-26. Dr. Garnand also found in connection with a functional capacity assessment that Plaintiff was limited to jobs that require less than three months to learn. *Id.* at 127. Dr. Burt, a consultative examiner, substantiated that Plaintiff has "significant difficulty with concentration". *Id.* at 231. This was also substantiated by Dr. Neal. *Id.* at 344.

The ALJ found in the RFC that "the claimant is moderately restricted in activities of daily living, has mild difficulties in maintaining social functioning, has moderate restrictions in maintaining concentration, persistence, or pace, and has never experienced an episode of decompensation." Inexplicably, none of these restrictions were included in the hypothetical questions given to the vocational expert. Tr. at 393, 397. This is another error that requires remand, since testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the ALJ's decision. *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993).[2]

Moreover, the RFC does not include the other limitations noted by Dr. Garnand, and there is no explanation in the record as to why the ALJ did not include all of these restrictions. This also was error. *See Wiederholt v. Barnhart*, 121 Fed. Appx. 833,

---

[2] One hypothetical question added certain limitations such as occasional interaction with the public and working jobs that required simple 1-5 step tasks. Tr. at 397. However, these did not match the impairments found in the RFC or by Dr. Garnand.

2005 WL 290082, *5 (10th Cir. 2005) ("[b]ecause the ALJ omitted, without explanation, impairments that he found to exist . . ., the resulting hypothetical question was flawed"). This is particularly true in this case since the VE testified in response to a hypothetical question that if the person had to take rest breaks as needed, it would preclude all unskilled work. Tr. at 396. As stated above, Dr. Garnand found that Plaintiff was moderately limited in the ability to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 126.

Finally, the ALJ found in the RFC that although Plaintiff's "ability to concentrate and attend to tasks is reduced somewhat secondary to her depression, she is not precluded from performing unskilled work." Tr. at 33. This does not adequately account for the significant concentration problems found by Drs. Garnand, Burt and Neal (and testified to by Plaintiff), and makes a speculative conclusion that I find is not warranted from the record.

More specifically, while Dr. Garnand stated that his functional capacity assessment was that Plaintiff was restricted to jobs she could learn in less than three months, it is unclear from his report whether and how this assessment took into account the other restrictions he noted, including the lack of concentration. Further, Dr. Garnand performed only a records review. Treating physician Dr. Neal, who also diagnosed concentration problems, found that Plaintiff would not be able to work. Tr. at 344-45. Dr. Burt, a consultative examiner, substantiated that Plaintiff had significant difficulty with concentration but did not make a functional assessment of this on Plaintiff's ability to work. *Id.* at 231. The ALJ did not adequately discuss this evidence,

and also did not explain why he believed that Plaintiff's concentration issues would not impact unskilled work.  These issues need to be adequately addressed on remand.

I further find error with the ALJ's assessment of Plaintiff's pain, fatigue and other nonexertional impairments.  This also impacts the ALJ's findings as to Plaintiff's credibility.  The record is replete with findings as to Plaintiff's chronic pain and fatigue as well as a number of other nonexertional impairments, such as urinary frequency and incontinence.  This chronic pain was well documented in Dr. Neal's records and assessment.  Tr. at 220, 221.  The pain was also substantiated by specialist Dr. Lynch, consultative examiners Dr. Burt and Dr. Garnand, and in the physical assessment form completed in May 2003.  *Id.* at 117-124, 338.  Indeed, there appears to be nothing in the record to indicate that Plaintiff's complaints of pain are not worthy of belief.

Further, there is objective evidence of a pain-producing impairment, including the MRI.  Dr. Neal states that the lumbar x-ray revealed "lumbar scoliosis as well as wedging of L5-S1".  *Id* at 221.  Dr. Berardelli, an associate of Dr. Neal's, notes that the MRI documents "mild degenerative disc change at L3-4, L4-5 , L5-S1" and "dessication without significant loss of disc height and very minimal disc bulges . . . ."  *Id.* at 227.  Dr. Neal's records also document spasm and tightness in the cervical/thoracic/lumbar region and restricted range of motion.  *Id.* at 220-21, 223. 227.

The fact that the MRI showed only mild degenerative disc disease (*id.* at 32) does not allow the ALJ to infer that Plaintiff's complaints of pain are not credible, as it is still objective evidence of back impairments.  This is particularly true in light of the findings of Drs. Neal and Berardelli that document other objective signs of back

problems and scoliosis.  The ALJ's decision to discount the MRI is an improper substitution of his medical judgment for that of the physicians.  *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996); *see also Langley*, 373 F.3d at 1121 ("'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'"  *Id.* (emphasis in original) (quotation omitted).  I also find that the record showed a nexus between the back and other impairments and the complaints of pain.  Thus, the ALJ was required to consider whether Plaintiff's pain is disabling.  *See Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992).

I find that the ALJ did not conduct a proper analysis of this issue.  He did not discuss the objective record that substantiates the pain or the effect of the narcotics that Plaintiff must take for that pain.  *See* Tr. at 220.  While the ALJ discussed the fact that Plaintiff was not consistent in taking medication for her hepatitis C (*id.* at 32), this does not impact the objective and subjective evidence as to Plaintiff's pain from her back problems.  The ALJ appeared to discount all of the medical evidence as to the back problems, finding that they "wax and wane."  *Id.*  This is not supported by the evidence.  While the medical records do not show complaints of back pain at every visit, the record is replete with complaints of back pain by Plaintiff and the objective medical evidence documents that pain, as discussed above.

-14-

The ALJ also rejected Plaintiff's complaints of pain and other nonexertional impairments because "no treating or examining physician, with the exception noted above, has opined that the claimant is disabled or imposed more restrictive limitations on the claimant than the undersigned." Tr. at 33.  The exception noted by the ALJ is Dr. Neal, who did opine that Plaintiff could not work and imposed serious restrictions on her ability to work.  I have already found that Dr. Neal's opinions were not properly weighed, which means that this finding is not supported by substantial evidence.

'      I further note that a physician does not have to find that a claimant is "disabled" in order for the ALJ to give credibility to a claimant's complaints of pain or other nonexertional impairments.  Even if the ALJ finds that plaintiff's pain, by itself, is not disabling, "that is not the end of the inquiry."  *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994).  "The [ALJ] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers*.'"  *Id.* (emphasis in original) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted).  "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do  . . . work." *Id.*  I find that the ALJ erred in failing to properly assess this.[3]

I reject, however, Plaintiff's argument that the ALJ's finding that the Plaintiff can perform light work is not supported by substantial evidence.  The ALJ did not actually

_____

    [3]  I also note another error on the issue of Plaintiff's credibility.  The ALJ appeared to discount Plaintiff's complaints as to concentration on the basis that Plaintiff was found to be capable of managing her money and had no other cognitive problems.  *Id.* at 32.  This is not supported by substantial evidence, as the ability to concentrate is different than a person's level of cognitive functioning or the ability to manage money, as noted by Dr. Burt.  The record is undisputed that Plaintiff has problems concentrating, and the ALJ was not entitled to discount Plaintiff's credibility on this basis.

find that Plaintiff could perform light work in the RFC, but noted that the consultative

examinations would have permitted this.  Tr. at 33.  Instead, the ALJ found that Plaintiff

could perform a range of unskilled sedentary work.  *Id.*

        2.      Whether the ALJ Erred in Connection with Plaintiff's Diabetes and
               Back Problems at Step Two

      Plaintiff also argues that the ALJ erred in failing to consider whether her

diabetes and lumber scoliosis are severe impairments.  I agree.  In order for an

impairment to be "not severe", the medical evidence must establish "only a *slight*

*abnormality or combination of abnormalities* which would have *no more than a minimal*

*effect* on an individual's ability to work even if the individual's age, education, or work

experience were specifically considered."  *Lee v. Barnhart*, No. 03-7025, 2004 WL

2810224, at *1 (10th Cir. 2004) (quoting Social Security Ruling 85-28, 1985 WL 56856,

at *3) (emphasis in original).  "While 'the mere presence of a condition or ailment' is not

enough to get the claimant past step two . . . a claimant need only make a 'de minimus'

showing of impairment to move on to further steps in the analysis."  *Id.* (quotations

omitted).

      The record certainly demonstrates that Plaintiff had diabetes and back problems,

including scoliosis.  There is also evidence in the record that shows these impairments

may significantly limit Plaintiff's ability to work.  *See*, *e.g.*, Tr. at 343-47.  The ALJ did

not discuss this evidence or make any findings as to why Plaintiff's diabetes and

lumbar problems were not severe at step two.  *See* Tr. at 28.  I have also found nothing

in any other section of the decision that addresses these issues.  There is little to no

discussion of the diabetes and its impact on Plaintiff's ability to work in the ALJ's decision.  As to Plaintiff's back problems, the ALJ did discuss this issue in connection with his assessment of Plaintiff's credibility.  However, I found in Section III.B.1, *supra*, that the reasons given by the ALJ for discounting these problems (such as the reference to the back problems waxing and waning) were not supported by substantial evidence.  I also found in that section that the record documents numerous impairments and restrictions on work as a result of the back problems.

Accordingly, I find that a reversal and remand is required so that the ALJ can properly assess Plaintiff's back impairments and diabetes and their impact on Plaintiff's ability to work.  If these impairments are found to be severe, the ALJ must then conduct a proper step three analysis to determine if the impairments meet or equal the requirements of the Listings.

        3.      <u>Whether the ALJ Made Contradictory Findings as to Plaintiff's Upper Extremity Restrictions</u>

Finally, I address Plaintiff's argument that the ALJ made contradictory findings as to Plaintiff's upper extremities.  It is true that contradictory findings were made.  In the RFC, the ALJ found that Plaintiff did not have any upper extremity impairments.  Tr. at 35.  However, in the hypothetical question, the ALJ included a restriction of no reaching over the shoulder.  *Id.* at 393.  I think this would have been harmless error if this was the only error made.  *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993).[4]  However, since I find that the ALJ erred at steps two onward and did not

___

[4] Specifically, the fact that a restriction was imposed in the hypothetical that the ALJ did not impose in the RFC made the hypothetical question more restrictive than it should have been.  While

include all of Plaintiff's impairments in the hypothetical questions, the ALJ must do a new step five analysis.  This should include a proper statement of Plaintiff's impairments that is consistent with the RFC.[5]

## IV.   CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded for reweighing of the evidence and further fact finding consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g).

Dated August 17, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge

---

prejudice could certainly have occurred to Plaintiff if the hypothetical was less restrictive than it should have been , *i.e.*, if it did not include all of Plaintiff's impairments, this is not the situation.  Even with the added restriction in the hypothetical question, the VE testified that there were jobs Plaintiff was able to do.

[5]  Plaintiff also argues that the ALJ incorrectly relied on a category of jobs that the VE testified to, and did not find out the specific number of jobs for the example the expert gave within that category of a fishing reel assembler.  I find no error in this regard, as the VE testified that Plaintiff would be able to perform the entire category of jobs.  However, this is moot as the step five analysis will need to be reexamined on remand.